## Mathers's Executor *versus* Patterson.

*It seems*, that the power of a court to open its judgments, obtained adversely, ceases with the expiration of the term at which they were obtained.

In the formation of a partnership, it was agreed, that a part of the personal property on hand should be set apart to pay the debts of a former firm, of which both the parties were members; and, inasmuch as a large part of the personal property on hand, represented investments previously made for the improvement of the real estate, which they owned as tenants in common with two others, it was agreed, that a portion should be set apart equivalent to what had been so expended; and that the remainder should be deemed the stock of the new firm: *Held*, that the improvement fund thus set apart constituted no part of their capital stock.

ERROR to the Common Pleas of *Juniata county.**

This was an action of account render by Andrew Parker, executor of James Mathers, deceased, against William H. Patterson, late copartners.

Judgment *quod computet* having been entered, auditors were appointed, who reported a balance in favour of the plaintiff of $183.55. And on the 9th May 1855, the court below, after correcting an error in the calculation of interest of $233.33, entered final judgment for the plaintiff. The plaintiff then sued out a writ of error, which was non-prossed by this court, on the ground that no question of law was raised upon the record; and on the 14th June 1855, the record was remitted to the court below.

The plaintiff, thereupon, petitioned the court to refer the matter back to the auditors to report the issue of law raised upon the partnership agreement, which was granted; and on the 7th February 1857, the auditors certified an issue of law to the court.

William H. Patterson, Robert Patterson, John Patterson, and James Mathers, were in partnership in the business of tanning, milling, merchandising, and farming, under the firm of William H. Patterson & Co. This firm was dissolved on the 27th March 1849, by Robert and John Patterson assigning their respective interests in the firm to William H. Patterson. By the same instrument, they leased to William H. Patterson, all their interest in the real estate owned by the members of the former firm, as tenants in common, for the term of six years from the 1st April 1859.

On the 10th April 1849, James Mathers and William H. Patterson entered into partnership, for the term of six years, under the firm of Mathers & Patterson; and in their articles of copartnership provided as follows:—

* This case was decided in 1858.

" And in order to equalize the investments of said parties, it is agreed, that all the stock in trade, personal property and effects, goods, wares, and merchandise, accounts, hides, leather and bark, shall be inventoried and appraised, as soon as conveniently can be done, at their present cash value ; and if *no aggregate cash value* can be agreed upon for the hides and leather, they shall cause the same to be tanned and sold, and a true account of the expense thereof to be kept ; and after deducting all costs, charges, and expenses of tanning, managing, transporting, and selling said leather ; and after deducting all debts of the firm of Wm. H. Patterson & Co. in any manner or for anything whatsoever ; and all expenses for buildings, extraordinary repairs and permanent improvements and repairs to the real estate ; the clear net value in cash of the aforesaid goods, wares, and merchandise, personal effects, proceeds of hides and leather, shall be deemed the capital stock, and shall be considered as owned by and belonging to the said James Mathers and William H. Patterson in the proportion of the original investment made by the said James Mathers and William H. Patterson, individually in the late firm of W. H. Patterson & Co. (The investments made in said firm by John & Robert Patterson being considered as sunk and applied to improvements and buildings or real estate, and are not to enter into this division of the personal estate.) And the said capital shall be equalized, by the payment by said Mathers into the business and for the benefit of the firm, a sum, which with his part of the amount above ascertained will make an equal amount, to the share of said Patterson in said valuation and proceeds—the money to be paid by said Mathers within ninety days from this date—and upon payment thereof, said Mathers shall be equal owner of the aforesaid personal estate and effects, goods, wares, and merchandise, hides, leather, bark, accounts, &c., &c."

Before the auditors, the plaintiff contended that the true construction of the ageement of the 10th of April 1849, was, that the shares of Robert and John Patterson, in the firm of W. H. Patterson & Co., being owned by Wm. H. Patterson at the time of the agreement, James Mathers became a purchaser of the one-half interest of the whole concern, and was entitled to an equal share of the profits that might be realized out of the working up of the stock remaining of the firm of Wm. H. Patterson & Co. ; and was, upon the payment of the difference between the amount of his investment and *the individual investment* of Wm. H. Patterson, to become, in the language of the agreement, an " equal owner of the aforesaid personal‧ estate and effects, goods, wares, and merchandise, hides, leather, book accounts, &c., &c."

The defendant, on the other hand, contended that the account of the firm of Wm. H. Patterson & Co. must be settled as though this agreement had not been made, and three-fourths of the

[Mathers's Executor *v.* Patterson.]

capital and profits of the concern paid to Wm. H. Patterson, and one-fourth only to Mathers. And that the amount expended in permanent improvements and repairs by that firm must be deducted from the proceeds, and three-fourths of it be paid to Wm. H. Patterson, as well as the amount of the original investments of Robert and John. And the auditors certified the same as an issue of law to the court.

The court below, after argument, decided to give the agreement the construction contended for by the defendant. The account was accordingly so adjusted, and judgment entered thereon. Whereupon the plaintiff sued out this writ, and here assigned the same for error.

*Casey* and *Parker,* for the plaintiff in error.

*S. Hepburn* and *Doty,* for the defendant in error.

The opinion of the court was delivered by
STRONG, J.—It is exceedingly doubtful whether the court below had any power to send back the report of auditors that they might certify issues of law, after final judgment had been entered thereon, and after that judgment had been removed to this court, and returned undisturbed because no questions of law were raised upon the record. There must be a time when the power of a court to open its judgments, obtained adversely, ceases. In England it ends with the term at which the judgment is signed. True, there is a reason for this which does not exist with us, arising from the peculiar manner in which the record is there made up and kept; but the rule of the English courts would seem to have been recognised as existing here : Catlin *v.* Robinson, 2 *Watts* 379–80; Stephens *v.* Cowan, 6 *Watts* 513.

Waiving, however, a further consideration of this question, our opinion is, that the judgment of the court below upon the issues certified by the auditors was a correct judgment. The agreement between Mathers and William H. Patterson evidently had for its first purpose, equality between the partners, alike in the investments and in the profits and losses. Of the personal property on hand at the time the parties contracted, a large part represented investments previously made for the improvement of the real estate which they owned as tenants in common with two others. Another large part was needed for the payment of debts of the former firm, of which they had both been members. For both these things, it was necessary to make provision. To accomplish this, it was agreed that, of the property on hand, there should first be set apart sufficient to pay the debts of the old firm; and next, a part equivalent to what had been expended in the improvement of the real estate. The net remainder, it was agreed, should be

deemed the capital stock of the new firm. The evident under-standing of the parties was, that the improvement fund thus set apart, was to be considered as real estate, or as absorbed in the land, and consequently was to be treated as so absorbed. The previous investments of John and Robert Patterson constituted a part of that improvement fund, and were, therefore, not to enter into the division of the personal estate; or, in other words, were not to be divided between Mathers and William H. Patterson. The improvement fund was to constitute no part of the capital stock of the new firm, of which the partners as such were to be joint-owners. It was what remained, after the deduction of the debts and the money expended in real estate improvements, that was called capital stock, and it was that remainder which was to be equalized by Mathers's payment of a stipulated sum into the firm.

The fallacy of the argument of the plaintiff in error consists in his reliance upon an isolated sentence in the agreement without noticing its qualification by the context. But the whole instrument must be construed together, and so as to make it consistent with itself. Every part of it must be regarded as significant. It is true that the contract stipulates at first that the parties were to be "equal owners in all the stock in trade, personal property and effects belonging to said establishment, goods, wares, and merchan-dise, hides, leather, bark, accounts, debts, &c.," but it immediately proceeds to describe how they shall own. They were to own subject to a deduction for past debts, and also subject to a deduction of the improvement fund. Until these were subtracted, no pro-vision was made for equalization. The whole of that part of the contract relates to division, and not to equalization. It was by this division, that the capital stock was to be ascertained, and it was only when that was determined, that the parties proceeded to stipulate how the ownership of that capital stock should be equalized. Nothing else was then to be equalized, except what remained after the deductions spoken of had been made. The equality was to be effected by payments which Mathers was required to make.

Nor, as the plaintiff in error contends, is the subsequent clause in the agreement which provides for distribution at the close of the partnership, inconsistent with this construction. That clause stipulates that at the expiration of the partnership, the parties should divide all the stock in trade, &c., equally between them. They had already designated what they meant by stock in trade, and defined it so as to exclude the improvement fund.

Entertaining these views of the agreement, we see no error in the judgment of the court below.

Judgment affirmed.